# FAX COVER SHEET

| | |
|---|---|
| **TO** | Berkman Law Office, LLC |
| **COMPANY** | Berkman Law Office, LLC |
| **FAX NUMBER** | 17185044943 |
| **FROM** | Berkman Law Office, LLC |
| **DATE** | 2020-07-03 01:29:15 GMT |
| **RE** | Zeitlin v. Palumbo 20-cv-510 |

## COVER MESSAGE

Dear Judge Cogan,

Per Your Honor's June 28, 2020 order the attached letter was due by today, July 2, 2020. However, when I went to file it this evening, the ECF system was not working. I checked the notices section of the EDNY website, and learned that ECF is scheduled to be offline for 24 hours starting July 2, 2020 at 6:00PM. A copy of that notice is also attached. In order to comply with the deadline I am faxing the letter to Chambers and to defense counsel, whom I will also email, and I will efile the letter after the ECF system comes back online.

Respectfully,

Robert Tolchin

7/2/2020

Eastern District of New York | United States District Court

## Notices

### IN RE: CORONAVIRUS/COVID-19 PANDEMIC

**July 1, 2020: One Administrative Order was entered:**

Administrative Order 2020-20-1 - Amending Administrative Order 2020-20 to Further Exclude Time Under The Speedy Trial Act for the Filing of Indictments Until July 13, 2020.

All Administrative Orders related to the COVID-19 outbreak and all detention facility reports filed pursuant to Administrative Order 2020-14 can be accessed on the Coronavirus (COVID-19) Information page, here.

The Clerk's Office in both Brooklyn, NY, and Central Islip, NY, will only accept paper filings in the drop box in the lobby of the courthouse. Attorneys filing with this court are strongly encouraged to file electronically. Paper filings may be delayed.

\*\*\*CM/ECF will be unavailable from 6PM on Thursday July 2nd through 6PM on Friday July 3rd.\*\*\*
- Click here for and Important Notice to All Attorneys and Other Filers re PACER Account Security

Notice to the Bar: All requests for Certificates of Good Standing must be made in CM/ECF. See these instructions.



### Court Locations

Brooklyn
225 Cadman Plaza East
Brooklyn, NY 11201

https://www.nyed.uscourts.gov

# THE BERKMAN LAW OFFICE, LLC

111 Livingston Street, Suite 1928
Brooklyn, New York 11201

Tel: (718) 855-3627                                                                                          Fax: (718) 855-4696

July 2, 2020

**BY ECF**
Hon. Brian M. Cogan
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  *Zeitlin v. Palumbo, et al.*
            <u>Case no. 20-cv-510</u>

Dear Judge Cogan,

      The undersigned represents Plaintiff in the matter referenced above.

      This letter is submitted in response to the June 28, 2020 minute order directing Plaintiff to show cause why sanctions should not be imposed for failure to comply with a court order to file a detailed letter by June 24, 2020. This letter also responds to the letters from defense counsel, both dated June 17, 2020, seeking leave to file motions to dismiss and for sanctions (Dkt. 29, 30).

**A.**     **Explanation and Apology for Not Complying with the June 24 Deadline**

      The explanation for Plaintiff's failure to respond to Defendants' letters by the June 24 deadline is simply human error by the undersigned. When Defendants e-filed their pre-motion letters, I received the ECF bounces. I remembered clearly that the previous time Defendants filed pre-motion letters, the Court had issued a scheduling order directing that a response to the letters be filed by a set date, and so I believed I was awaiting receipt of such a scheduling order before Plaintiffs' response would be due. The thought even crossed my mind that the Court might not desire a response since these pre-motion letters were so similar to the previous pre-motion letters. I simply forgot that a schedule for the amendment of the complaint, pre-motion letters, and Plaintiff's response had been set during the May 12, 2020 conference and re-set at my request on June 1, 2020. In retrospect, I should have reviewed the docket and the Court's Individual Practices when Defendant's pre-motion letters came in, and I should not have relied only on memory alone.

      A contributing factor in my error was that my office had been closed for over three months, with most of our staff on furlough and only a small number of people working from home. To say this

THE BERKMAN LAW OFFICE, LLC

July 2, 2020
Page 2 of 5

experience was discombobulating would be an understatement, as I had barely missed spending a business day in the office in 28 years, unless in court, at depositions, or otherwise working. Our regular office procedures meticulously track deadlines set in court orders and send out reminders, but the regular systems were not working. At the time the pre-motion letters came in I was preoccupied with making arrangements to re-open our office, including setting up social distancing procedures and working out staggered schedules for staff to start returning to the office, as we partially re-opened on June 23.

I assure the Court that no affront was meant by not responding to the letters by the deadline, and Plaintiff's failure to do so was neither willful nor contumacious, and was the result of nothing more than human imperfection on my part.

I respectfully apologize to the Court and ask that my error be excused.

**B.    Response to Pre-Motion Letters**

The arguments made in the present pre-motion letters are essentially the same arguments as were made before with respect to the original complaint, and therefore this letter repeats much of what was said in response to the first pre-motion letters.

However, the allegations are now clearer. The amended complaint separated out the causes of action two groups of defendants, Nicholas Palumbo, Natasha Palumbo, Ecommerce National, LLC d/b/a TollFreeDials.com and Sip Retail d/b/a sipretail.com ("Palumbo Defendants") and Jon Kahen a/k/a Jon Kaen, Global Voicecom, Inc., and Global Telecommunications Services, Inc. ("Kahen Defendants"). The amended complaint also clarified some of the issues that had been pointed out as weaknesses in the original round of pre-motions letters.

Defendants operate various aspects of the illicit business known as robocall fraud. Through their actions and equipment, for years Americans have been constantly bombarded with literally billions of robocalls seeking to draw them into all manner of fraudulent schemes with lies and deceit. Call recipients are told that their social security numbers will be "frozen" if they do not cooperate with a bogus investigator who needs money to be sent in immediately, that they will be arrested for money laundering or drug dealing, that they must provide their credit card or banking information, that their car warranties are about to expire, that they need to provide credit card information for cockeyed reasons, that there are tax liens against them, that they are going to be deported, and the list goes on. Many have been bombarded with pointless calls playing recordings in Chinese, Spanish, and other foreign languages they do not even speak.

The problem has become so severe that in 2018 when the Swedish Royal Academy of Sciences called New York University professor Paul Romer to inform him that he had won the Nobel Prize in Economics, he let the call go to voicemail thinking that only a telemarketing call could be coming in at such an early hour. He told the media "I didn't answer the phone because I've been getting so many spam calls. I just assumed it was more spam." Millions of Americans have had their children woken up

THE BERKMAN LAW OFFICE, LLC

July 2, 2020
Page 3 of 5

with solicitations for massage parlors, had their dinner hour disturbed with scam solicitations, have their work interrupted, have been unable to keep their phones on so their families could reach them for fear of having it ring at an inopportune time, have had to put important calls on hold to answer what turns out to be spam robocalls, and have otherwise have had their lives made miserable by spam robocalls.

Defendants bear significant responsibility for this scourge. Disregarding all laws, ignoring complaints and warnings, and acting with a selfish quest for mammon regardless of the intrusive burden they place on their fellow Americans, the Defendants have deliberately facilitated billions of spam robocalls, while hiding behind false telephone numbers and spoofed caller ID's.

Plaintiff's response to the first pre-motion letter explained that Plaintiff's complaint is based *inter alia* on multiple sworn statements of government investigators, complaints filed by the United States against these defendants, and findings by other federal judges against these defendants, and attached all those materials (Dkt. 24, Ex. A – I). Plaintiff respectfully incorporates those materials by reference here.

Defendants' pre-motion letters complain that Plaintiff's complaint does not state his telephone number or state the numbers that called him, and that Plaintiff cannot prove—pre-discovery—that the robocalls he received involved Defendants. Plaintiff will certainly provide his telephone number to Defendants during discovery, or even via an informal request such as a telephone call or email, but omitted it from the complaint itself in an effort to preserve some modicum of privacy by avoiding having it available on the public docket. Regarding the numbers from which Plaintiff received calls, this issue is spurious since the allegations are that it is part and parcel of the robocall scams that the caller-ID numbers appearing in call recipients' phones are spoofed fake numbers that are different with every call. Moreover, Plaintiff did not record the number of every spam phone call he has received. Receiving such calls is a daily experience and ordinary people such as the plaintiff tend to hang up and get back to what they were doing as fast as possible, and do not maintain spam call logs. Surely the Defendants' automatic call logs will be able to identify the numbers called and determine if Plaintiff was called. Specific allegations of exactly when Plaintiff received a robocall, how many robocalls he received, from which number he received calls, or what the robocalls stated are not required to be provided in a complaint, which need only give notice of the claim and provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This is the sort of information that can be developed during discovery.

Moreover, there is no shortage of temerity on the Defendants' part in making some of these arguments For example, given that the nature of this beast is that billions of calls are made using fake numbers and technology that deliberately masks the true origin of the calls, demanding that Plaintiff plead the number called from for every call and the basis to believe each call involved Defendants is reminiscent of the Swiss banks that impossibly demanded death certificates before releasing assets of people killed in Auschwitz to their heirs. Surely once we conduct discovery Defendants' own records will show how many hundreds of millions or billions of calls they were involved in, how many called

THE BERKMAN LAW OFFICE, LLC

July 2, 2020
Page 4 of 5

Plaintiff's phone, and to what scam or scammer each call pertained. Given the astronomical number of calls Defendants were involved with, and the ubiquity of cell phone owners receiving these calls, the likelihood is high that Defendants were involved with calls received by Plaintiff.

Defendants resist Plaintiff's reliance on a likelihood that the calls involved Defendants based on the nature of their business and the sheer volume of calls. Defendants contend that Plaintiff must prove for a certainty from the get-go that the calls involved Defendants. Plaintiff, on the other hand, contends that likelihood is sufficient to state a good faith claim where Defendants have been involved in hundreds of millions or even billions of robocalls and Plaintiff has been getting calls every day, making it likely that at least some of the calls Plaintiff received involved Defendants. There is always a problem of proving the origin of fungible products, which is what resulted in the DES cases applying a market share approach, *Sindell v. Abbot Laboratories,* 26 Cal. 3d 588 (CA 1980), but unlike the DES cases where it was impossible even through discovery to determine whether the plaintiff took a pill manufactured by one manufacturer or another, here we will be able to determine from Defendants' own records whether the likelihood pans out.

The Palumbo Defendants argue they are not liable to Plaintiff under 47 USC § 227(b)(1)(A)(iii), which provides in relevant part that "it shall be unlawful...to make any call...using any automatic telephone dialing system or an artificial or prerecorded voice...to any telephone number assigned to a...cellular telephone service...or any service for which the called party is charged for the call...." *Id.* The Palumbo Defendants hang their hats on the words "make any call," arguing that whatever their precise roles in placing the calls might have been (they do not provide details), it did not qualify as "making" a call. The term "make" is not defined in the statute or any applicable regulation. The Palumbo Defendants cite *Melito v. Am. Eagle Outfitters, Inc., Melito v. Am. Eagle Outfitters, Inc.,* No. 14-cv-02440 (VEC), 2015 U.S. Dist. LEXIS 160349 (S.D.N.Y. Nov. 30, 2015), where the defendant was held not to have "made" the offending text message. However, the issue in *Melito* was whether an advertiser who hired an advertising contractor to conduct an ad campaign was vicariously liable for violations of § 227 perpetrated by the advertising contractor, albeit acting on behalf of the advertiser. *Melito* held that § 227 does not impose <u>vicarious</u> liability, and allows suit only against those directly involved in "making" a call, not those on whose behalf a call is made. There was no contention in *Melito* that the advertiser had any hand in the actual call. Unlike *Melito,* in our case the contention is that Defendants were each actually involved in "making" calls. The telephonic service provided by the Palumbo Defendants was intrinsically part of such calls—literally, they connected the calls. This is a claim of joint and several liability (¶ 94), not vicarious liability. The Palumbo Defendants did not simply order an ad campaign to be conducted by someone else while they kept their hands clean like the defendants in *Melito*. The Palumbo Defendants were an integral part of the actual physical connection of the calls, and thus can be viewed as having had a hand—alongside others, to be sure—in "making" the calls. This exact analysis of the cases cited by Defendant was presented by Plaintiff in response to the original pre-motion letters but Defendants have not responded to it.

THE BERKMAN LAW OFFICE, LLC                          July 2, 2020
                                                     Page 5 of 5

      The Palumbo Defendants, joined by the Kahen Defendants, contend that the complaint does not allege that he received calls involving an Automated Telephone Dialing System ("ATDS"), or a pre-recorded voice message, or that the calls were received without his consent. Defendants are wrong. This exact allegation is contained in ¶¶ 63 and 102 of the amended complaint.

      Regarding the Palumbo Defendants' request for leave to file a motion for sanctions under Rule 11, no such motion can be filed at this time because those defendants have not followed the procedure required by Rule 11(c)(2), which provides that "[t]he motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* While the Palumbo Defendants did serve a Rule 11 motion relating to the original complaint, the original complaint has been superseded by the amended complaint, and no Rule 11 motion has been served regarding the amended complaint. Thus, the Palumbo Defendants are seeking leave to file a motion that has not been teed up to be filed in keeping with the very rule under which they seek to move.

      Plaintiff thanks the Court for its efforts in this matter and wishes the Court an enjoyable Fourth of July weekend.

                                             Respectfully yours,
                                             /s/ Robert J. Tolchin
                                             Robert J. Tolchin

cc:    Theodor D. Bruening, Esq. (by ECF)
        Joseph R. Conway, Esq. (by ECF)



Robert Tolchin <rtolchin@berkmanlaw.com>

## Successful transmission to 17185044943. Re: Zeitlin v. Palumbo 20-cv-510
1 message

**send@mail.efax.com** <send@mail.efax.com>  Thu, Jul 2, 2020 at 9:38 PM
To: rtolchin@berkmanlaw.com



Your fax was successfully sent to 17185044943 by eFax.

### Fax Details

**Date:** 2020-07-03 01:38:35 (GMT)
**Number of Pages:** 7
**Length of Transmission:** 316 seconds
**Receiving Machine Fax ID:** 17185044943

If you have any questions, please visit our online help center or contact Customer Support.

Thank you for choosing eFax.

Sincerely,
The eFax Team

**Tip:** Switch to an annual plan – it's like getting 2 months free every year! Call (800) 958-2983 or email help@mail.efax.com.

Download the App:      Follow us:    

© 2020 J2 Global, Inc. or its affiliates (collectively, "J2"). All rights reserved.
eFax is a registered trademark of J2.
700 S. Flower St., 15th Floor, Los Angeles, CA 90017

This account is subject to the terms listed in the eFax Customer Agreement.



Robert Tolchin <rtolchin@berkmanlaw.com>

## Successful transmission to 15162483522. Re: Zeitlin v. Palumbo 20-cv-510
1 message

**send@mail.efax.com** <send@mail.efax.com>  Thu, Jul 2, 2020 at 9:35 PM
To: rtolchin@berkmanlaw.com



Your fax was successfully sent to 15162483522 by eFax.

### Fax Details

**Date:** 2020-07-03 01:35:57 (GMT)
**Number of Pages:** 7
**Length of Transmission:** 352 seconds

If you have any questions, please visit our online help center or contact Customer Support.

Thank you for choosing eFax.

Sincerely,
The eFax Team

**Tip:** Switch to an annual plan – it's like getting 2 months free every year! Call (800) 958-2983 or email help@mail.efax.com.

Download the App:     Follow us:    

© 2020 J2 Global, Inc. or its affiliates (collectively, "J2"). All rights reserved.
eFax is a registered trademark of J2.
700 S. Flower St., 15th Floor, Los Angeles, CA 90017

This account is subject to the terms listed in the eFax Customer Agreement.



Robert Tolchin <rtolchin@berkmanlaw.com>

## Successful transmission to 16464925111. Re: Zeitlin v. Palumbo 20-cv-510

**send@mail.efax.com** <send@mail.efax.com>  Thu, Jul 2, 2020 at 9:35 PM
To: rtolchin@berkmanlaw.com



Your fax was successfully sent to 16464925111 by eFax.

### Fax Details

**Date:** 2020-07-03 01:35:37 (GMT)
**Number of Pages:** 7
**Length of Transmission:** 352 seconds
**Receiving Machine Fax ID:** HFR

If you have any questions, please visit our online help center or contact Customer Support.

Thank you for choosing eFax.

Sincerely,
The eFax Team

**Tip:** Switch to an annual plan – it's like getting 2 months free every year! Call (800) 958-2983 or email help@mail.efax.com.

Download the App:     Follow us:    

© 2020 J2 Global, Inc. or its affiliates (collectively, "J2"). All rights reserved.
eFax is a registered trademark of J2.
700 S. Flower St., 15th Floor, Los Angeles, CA 90017

This account is subject to the terms listed in the eFax Customer Agreement.

   Robert Tolchin <rtolchin@berkmanlaw.com>

# Successful transmission to 17186132236. Re: Zeitlin v. Palumbo 20-cv-510
1 message

**send@mail.efax.com** <send@mail.efax.com>   Thu, Jul 2, 2020 at 9:53 PM
To: rtolchin@berkmanlaw.com



Your fax was successfully sent to 17186132236 by eFax.

**Fax Details**

**Date:** 2020-07-03 01:53:07 (GMT)
**Number of Pages:** 7
**Length of Transmission:** 319 seconds

If you have any questions, please visit our online help center or contact Customer Support.

Thank you for choosing eFax.

Sincerely,
The eFax Team

**Tip:** Switch to an annual plan – it's like getting 2 months free every year! Call (800) 958-2983 or email help@mail.efax.com.

Download the App:     Follow us:    

© 2020 J2 Global, Inc. or its affiliates (collectively, "J2"). All rights reserved.
eFax is a registered trademark of J2.
700 S. Flower St., 15th Floor, Los Angeles, CA 90017

This account is subject to the terms listed in the eFax Customer Agreement.