

THEODOR BRUENING
COUNSEL
P: (646) 396-6452
E: tbruening@hechtpartners.com

July 13, 2020

**By ECF**
Hon. Brian M. Cogan, U.S.D.J.
United States District Court
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:      *Zeitlin v. Palumbo, et al.* (1:20-cv-00510-BMC)

Dear Judge Cogan:

      Defendants Nicholas Palumbo, Natasha Palumbo, Ecommerce National, LLC d/b/a TollFreeDials.com and Sip Retail d/b/a sipretail.com ("Defendants") submit this letter pursuant to the Court's order dated July 5, 2020. In the order, the Court considered the motions fully briefed by the letters filed on ECF (docket no. 29, 30, 33) and permitted the parties to submit additional briefing by July 13, 2020. Defendants hereby submit this letter to supplement their briefing and to reply to the arguments made by plaintiff in his opposition letter (docket no. 33, the "Letter"). Defendants also briefly respond to the letter filed by plaintiff today (docket no. 36). As before, in the interest of judicial economy, both of Defendants' motions are addressed herein.

### I. Motion to Dismiss – Reply and Supplemental Briefing

*A. Standing*

      "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986). The amended complaint ("complaint") makes no such showing. Plaintiff admits that he *does not know* if he in fact received a single call from a number transmitted by Defendants. Plaintiff guesses that there is a "likelihood" that he received such a call and that it is "anticipated that discovery in this action will reveal" whether he received a call. Compl. ¶65. Thus, plaintiff has no standing to bring this suit.

      The Letter contains no opposition to this argument. The Letter at no point makes it clear how plaintiff's claims are not "speculative, conjectural or hypothetical" and how plaintiff suffered an invasion of a legally protected interest that is "concrete and particularized and actual or imminent." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (quotation marks omitted). Simply put, plaintiff has chosen not to oppose this part of the motion to dismiss or to explain how the allegations in the complaint meet the standing requirements in *Spokeo*. The argument is thus admitted and the complaint should be dismissed. *Amiron Dev. Corp. v. Sytner*, No. 12-CV-3036 JS ETB, 2013 WL 1332725, at *8 (E.D.N.Y. 2013).

*B. Failure to State a Cause of Action*

      Fed. R. Civ. P. 12(b)(6) provides for dismissal where a plaintiff has failed to state a claim upon which relief can be granted. A legal claim mandates the pleading of sufficient facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegations"

Hon. Brian M. Cogan, U.S.D.J.
July 13, 2020
Page 2

will not suffice. *Id.* A "formulaic recitation of the elements" of a claim likewise fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Instead, the complaint must allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Twombly*, 550 U.S. at 556. If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

The elements of a TCPA claim are that "(1) (a defendant) called [the plaintiff] on her cell phone; (2) using an automated telephone dialing system ["ATDS"] or prerecorded voice; (3) without her consent." *Simon v. Ultimate Fitness Group*, 2019 WL 4382204 *6 (SDNY).

On the first element, the complaint provides *no evidence* and *no specifics* alleging that plaintiff either received any calls, or that defendants placed any call to plaintiff. Nor could he, since defendants as telecommunications carriers do not and cannot place calls; they only transmit others' calls. Instead, plaintiff simply claims that it is "likely" that defendants *connected* a call that was received by plaintiff. Compl. ¶65. Plaintiff's theory is that defendants' actions as a carrier brings them within the term "make" in 47 USC § 227(b)(l)(A)(iii), which states that is shall be "unlawful… to *make* any call ... using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service…" (emphasis added). Compl. ¶66-68.[1] Plaintiff argues that the "term 'make' is not defined in the statute or any applicable regulation" and thus should cover defendants (Letter at 4).

However, plaintiff ignores that the term "make" has been defined by courts.[2] Plaintiff ignores case law cited by defendants and cites no sources in support of his novel definition. Plaintiff only seeks to distinguish *Melito v Am. Eagle Outfitters, Inc*., No. 14-CV-02440, 2015 WL 7736547 (SDNY 2015) by drawing attention to the fact that plaintiffs in *Melito* relied on a vicarious liability theory. That is irrelevant; the court in *Melito* unambiguously defined "make" in the TCPA as "physically plac[ing] or actually sen[ding]" the call or message (*id*. at *4); and the complaint here does not assert that defendants "physically placed" or "sent" any calls. Under *Twombly*, a complaint "must give the court reason to believe that **this** plaintiff has a reasonable likelihood of mustering factual support for **these** claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). The complaint fails at this basic step.

Further, not only did defendants not *make* the calls – plaintiff misconstrues the verb in the statute – but also *defendants* did not make the calls – plaintiff is suing the wrong people. Defendants are telecommunications carriers, which the TCPA does not cover. The Senate Reports from the Senate Committee on Commerce, Science, and Transportation on the Act's provisions make it clear that its provisions "apply to the persons *initiating* the telephone call or sending the message and *do not apply* to the common carrier or other entity that transmits the call or message and that is not the originator or controller of the content of the call or message." S. Rep. No. 102–178, 1991 U.S.C.C.A.N. 1968, 1977, 1991 WL 211220 at *9 (emphasis added)). This argument was raised in defendants' moving letter, wholly ignored by plaintiff and is thus admitted. *Amiron, supra*.

---

[1] Plaintiff also states that defendants did so "alongside others, to be sure" (compl. ¶68), but does not name any "others" or sues any John Doe defendants.
[2] *E.g. Gomez v. Campbell-Ewald, Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014) ("To 'make' a call under the TCPA the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call."), *Couser v. Pre-paid Legal Services, Inc.,* 994 F.Supp.2d 1100, 1104 (S.D.Cal. 2014) (The TCPA was intended to "apply to the persons *initiating* the telephone call or sending the message and ... not to the common carrier ... that transmits the call or messages and that is not the originator or controller of the content of the call or message." (emphasis in the original)).

125 Park Ave. 25th Floor, New York, NY 10017

Hon. Brian M. Cogan, U.S.D.J.
July 13, 2020
Page 3

Finally, plaintiff cannot satisfy the first element of the cause of action because he does not even state when he was called, at which number, by which number, how often, or describe the contents of the call. Plaintiff now claims – for the first time – that he did not provide his phone number for privacy reasons (Letter at 3). The argument lacks credibility. If plaintiff wanted to assert necessary facts and protect his privacy, he should have requested leave to file the complaint with the number redacted. He did not do so; the argument is an obvious after-the-fact ploy.

Plaintiff further claims that he has not provided the numbers that called him because they may be "spoofed" (Letter at 3). The argument is a *non sequitur*; just because a number may be spoofed it does not follow that it should not or cannot be listed in a complaint.

Plaintiff states that he "did not record the number of every spam phone call he has received" (Letter at 3). The point is a red herring; defendants' argument is not that plaintiff did not provide details of *all* numbers that called him, it is that he did not provide *any* details of *any* number that called him. Plaintiff also fails to distinguish any of the cases cited by defendants on this point.

Plaintiff revealingly states that he did "not maintain spam call logs… the Defendants' automatic call logs will be able to identity the numbers called and determine if Plaintiff was called… This is the sort of information that can be developed during discovery." (Letter at 3).[3] Simply put, plaintiff does not know, and requires discovery to determine, not the *contours* of his action, but *whether he has an action at all*. This lawsuit is the definition of a fishing expedition.[4]

In a desperate attempt to meet the *Twombly* standard, plaintiff not only engages in absurd hyperbole by equating defendants to banks demanding death certificates before releasing assets of holocaust victims (implicitly equating recipients of unwanted robocalls to holocaust victims), but also claims that defendants connected "hundreds of millions or billions of calls" and that the "likelihood is high" that defendants were responsible for calls received by plaintiff (Letter 3-4). None of this is supported by the complaint or the Letter.

The complaint does not state how many calls were connected by defendants; it repeatedly refers to "millions" (compl. *passim*). The only specific numbers are found in paragraph 44, which states that "over 23 days in May and June of 2019, TollFreeDeals transmitted more than 720 million calls." Assuming that these 23 days are a representative sample, it would mean that in one year defendants connected around 11.5 billion calls.[5] In 2019, Americans received 106.8 billion unwanted robocalls.[6] Thus, assuming that *every single call* that defendants ever connected was an unwanted robocall – which would be false and is not supported by the complaint – only around one in ten robocalls in 2019 passed through defendants' system. Hence, even if one makes even the most extreme and unfounded inferences in plaintiff's favor, it would still not be likely or probable that a call received by plaintiff was connected by defendants; the assertions fail the *Iqbal* plausibility test.

---

[3] The information required here is entirely within plaintiff's grasp. Plaintiff could easily contact his phone provider, request a list of calls received, which he could review against numbers of legitimate callers that he knows.
[4] A plaintiff "must marshal more than unsubstantiated suspicions to gain entitlement to broad-ranging discovery." *Yamashita v Scholastic Inc.*, 936 F3d 98, 107 (2d Cir 2019).
[5] The actual number is much lower. Mr. Palumbo submitted a declaration in *USA v. Palumbo et al.*, 1:20-cv-00473 (the "government action," docket no. 38, ¶38, included in Exhibit 1 hereto) in which he explained that defendants in 2019 connected an average of 450 million calls per month, which makes 5.4 billion calls in 2019.
[6] See https://tnsi.com/tns-analysis-shows-unwanted-robocalls-jump-nearly-50-percent-in-2019/; copy annexed hereto as **Exhibit 1**.

125 Park Ave. 25th Floor, New York, NY 10017

Plaintiff cites *Sindell v. Abbott Labs.*, 26 Cal. 3d 588 (1980). The case – a California state court decision from 1980 – is inapt. In *Sindell*, the court held that producers of a harmful drug had to pay victims based on their market share of the drug. The reliance is puzzling; the complaint makes no statements as to defendants' market share in the VoIP industry, and as outlined *supra*, the argument on likelihood fails. Importantly, no court has ever held that a market share division analysis applies to VoIP carriers and the complaint makes no case to modify or extend existing law.

On the second element, Plaintiff claims to have satisfied the element by pointing out that the complaint at ¶63 asserts that he was called using an ATDS (Letter at 5). That misses the point – plaintiff claims that persons *other than defendants* used an ATDS by calling on a line connected by defendants. That is not sufficient. The complaint does not allege that defendants themselves operated an ATDS. Yet the plain language of the statute and its legislative history makes it clear that to have a TCPA claim it must be the defendants that use the ATDS. Case law is equally clear – the elements of a TCPA claim are that "(1) (a defendant) called [the plaintiff] … (2) using an automated telephone dialing system ["ATDS"] or prerecorded voice…" *Simon, supra*. The court in *Simon* did not state that the *receipt* of a call using an ATDS is an element of the TCPA, but that the element requires that a *defendant* call plaintiff using an ATDS – which the complaint does not assert.

Finally, the all facts in the complaint are pled upon information and belief (compl. p. 1). That cannot pass muster under *Twombly*, *see Gilford v NYS Off. of Mental Health*, No. 17-CV-8033, 2019 US Dist LEXIS 38450, at \*12-14 (SDNY 2019). *See also Nutrivita Labs., Inc. v VBS Distrib.*, No. SACV 13-01635, 2014 US Dist LEXIS 196117, at \*5 (CD Cal 2014), *Kaiser v ABN AMRO Mtge. Group, Inc.*, 2014, No. 13-2611, 2014 US Dist LEXIS 49495, at \*5 (D Minn 2014). *Twombly* applies with full force to consumer protection statutes such as the TCPA. *Diaz v Chase*, 416 F Supp 3d 1090, 1097 (D Nev 2019) (Pleading on "information and belief" is "speculative guesswork is insufficient to plausibly plead a cause of action" under the Fair Credit Reporting Act).

### II. Motion for Sanctions – Reply and Supplemental Briefing

*A. Reply to Opposition*

Plaintiff's only response to defendants' motion for sanctions is the claim that counsel for plaintiff ("counsel") never received any F.R.C.P. 11(c)(2) notice regarding the amended complaint (Letter at 5). The assertion is false.

On April 10, 2020, defendants served counsel with the motion for sanctions regarding the original complaint. A copy of the certificate of service and the served papers is annexed hereto as **Exhibit 2**. On June 10, 2020, plaintiff filed the amended complaint. On June 16, 2020, defendants served counsel with a letter outlining the grounds for the renewed motion for sanctions. A copy of the certificate of service and the served letter is annexed hereto as **Exhibit 3**. The letter states that the arguments made in the original motion apply with equal force to the amended complaint and that the amended complaint also sanctionably fails to provide for plaintiff's standing.

A letter stating legal bases for a sanctions motion satisfies Rule 11(c)(2). *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012). As the issues regarding the amended complaint are substantially the same as those regarding the original complaint, plaintiff had ample notice. *See id.* at 176 ("The motion for Rule 11 sanctions filed with the district court rested on substantially the grounds set forth in the earlier notice of motion, undercutting the argument that the motion did not comply with the safe harbor requirement.").

Hon. Brian M. Cogan, U.S.D.J.
July 13, 2020
Page 5

### B. Supplemental Briefing

A pleading violates Rule 11 either when it "has been interposed for any improper purpose or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification or reversal of existing law" *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002). Compliance is measured by an objective standard. *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985). Objectively, counsel's pleading fails all these hurdles – there was no proper purpose, no reasonable inquiry, no grounding in fact or law, and no argument for modification of existing law.

### 1. Lack of Reasonable Inquiry

The original complaint was filed within one day of the filing of the two government actions. There was no reason for this rush – no statute of limitations was about to expire, and the complaint did not allege any need for emergency action. It is not plausible that within one day Mr. Tolchin made any kind of investigation – let alone a reasonable investigation – into the veracity or sufficiency of the claims that he was asserting over 96 paragraphs in 31 pages. The amended complaint effectively repeats the same allegations, again on information and belief; despite being filed nearly six months later, there is no evidence of any investigation for the amended complaint. In determining whether Rule 11 has been violated, the focus of the inquiry should be the reasonableness of the investigation undertaken, not whether the moving party was prejudiced by the actions of the party under scrutiny. *Bradgate Assocs. v. Fellows, Read & Assocs.*, 999 F.2d 745 (3d Cir. 1993).

Specifically, counsel has not ascertained whether and when plaintiff received any calls connected by defendants, seeking to relegate this matter to discovery. That is sanctionable since "[p]leadings, motions, and other papers must be justifiable at the time they are signed." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1344 (2d Cir. 1991).

Given the paucity of detail concerning the call(s) received by the lead plaintiff – information in plaintiff's possession – it is doubtful that Mr. Zeitlin's claims are typical of the class and if he would fairly and adequately protect the interests of the class. A failure to make this determination is sanctionable under Rule 11. *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548 (9th Cir. 1986), *cert. denied*, 484 U.S. 822 (1987), *see also Garr v. U.S. Healthcare*, 22 F.3d 1274 (3d Cir. 1994), *reh'g, en banc, denied*, 1994 U.S. App. LEXIS 16425 (3d Cir. 1994).

### 2. The Complaint Is Impermissibly Based Wholly on Information and Belief Pleading

Under Rule 11(b), an attorney who presents a pleading, written motion, or other paper with the court certifies that to the best of his or her knowledge, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions contained in it have evidentiary support. Here, counsel's entire complaint is impermissibly based on "upon information and belief" (compl. p. 1). The text of the factual allegations is an identical copy of the facts alleged in the complaints filed in government action and *USA v. Kahen, et al.*, EDNY 20-cv-474. *See Gjokaj v. HSBC Mortg. Servs.*, 2014 U.S. Dist. LEXIS 89205, *18 (ED Mich 2014) (filing of "'cookie cutter' pleadings is potentially sanctionable conduct"), *Garr*, 22 F3d at 1278 (signing attorney has a "'personal, nondelegable responsibility' to comply with the requirements of Rule 11 before signing the document" including "a reasonable inquiry into the contents of the pleading."), *Gonzalez v*

*County of Merced*, 2017 US Dist LEXIS 82402, at *18, n 8, No. 1:16-cv-01682 (ED Cal May 26, 2017) ( "information and belief" pleading does not grant immunity from sanctions), *Window Headquarters v MAI Basic Four*, 1994 US Dist LEXIS 17104, at *53-55, 91 Civ. 1816, 93 Civ. 4135, 92 Civ. 5283 (SDNY 1994).

Rule 11 requires a careful investigation and consideration of claims asserted and inclusion of boilerplate allegations is improper. *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986), *cert. denied*, 480 U.S. 918 (1987). The question of reasonableness is objective and not based on the filing attorney's subjective belief. *Indianapolis Colts v. Baltimore*, 775 F.2d 177 (7th Cir. 1985). A failure to conduct a reasonable inquiry warrants sanctions. *Profile Publ'g & Mgmt. Corp. APS v. Musicmaker.com, Inc.*, 242 F. Supp. 2d 363 (SDNY 2003).

Plaintiff's entire factual allegations are based on the documents submitted by the government in the two government actions. Plaintiff never denies this. Yet plaintiff's legal theory differs from the government actions as it proceeds under a different statute, asserting different elements, on a different standard of proof, requesting a different type of relief. As shown below:

|  | *U.S.A. v. Palumbo et al.*, 1:20-cv-473, *USA v. Kahen, et al.*, EDNY 20-cv-474 | *Zeitlin v. Palumbo et al.*, 1:20-cv-510 |
| --- | --- | --- |
| *Plaintiff* | United States of America | Zeitlin, as representative of a putative class of private individuals |
| *Cause of action* | 18 U.S.C. § 1345 | 47 U.S.C. § 227 (b)(1)(A)(iii) |
| *Elements* | (1) Substantial Injury, and either<br>    (a) a likelihood of success on the merits, or<br>    (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.<br>(*UBS Fin. Servs., Inc. v. W. Va. Univ. Hosp., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011)) | (1) A defendant called the plaintiff on her cell phone;<br>(2) using an automated telephone dialing system ("ATDS") or prerecorded voice;<br>(3) without her consent.<br><br>(*Simon v. Ultimate Fitness Group*, 2019 WL 4382204 *6 (SDNY)) |
| *Standard of proof* | Probable cause<br>(*United States v CLGE, Inc.*, No. 214-CV-6792, 2014 US Dist LEXIS 177112, at *7-8 (EDNY 2014)) | *Twombly/Iqbal* – plausibility<br>(*e.g. Jennings v. Cont'l Serv. Grp., Inc.*, 239 F. Supp. 3d 662, 666 (WDNY 2017)) |
| *Relief* | Injunctive relief | Damages |

In short, the facts in the government complaint do not, and cannot, support the cause of action in the amended complaint. Even assuming that the facts as outlined by the government were sufficient to allege the elements in this case – which, as shown *supra*, they are not – it does not follow that the facts alleged would suffice since the government only had to meet the much lower "probable cause" standard of proof. It was highly inappropriate and sanctionably frivolous to blindly rely on the averments made in the government action. *See Brown v Ameriprise Fin. Servs.*, 2011 US Dist LEXIS 100841, at *7, No. 09-2413 (D Minn 2011) (copying and pasting factual assertions from an unrelated complaint violates Rule 11).[7]

---

[7] In addition, as a result of the indiscriminate parroting of the government's averments, the amended complaint uses present tense to describe facts that have not been true for many months; e.g. compl. ¶42 quotes in present tense from

Hon. Brian M. Cogan, U.S.D.J.
July 13, 2020
Page 7

### 3. There Is No Legal Basis for the Claims Asserted

A responsible pre-filing inquiry into the TCPA case law would have revealed that (1) the statute does not provide for a cause of action against a VOIP carrier and that (2) that the elements of a TCPA claim are not supported by the facts in the complaint as outlined *supra*.

### 4. The Amended Complaint Warrants Sanctions

A failure to research and apply federal law in an action brought in federal court warrants sanctions where the failure causes the other party to incur unnecessary costs. *Tenay v. Culinary Teacher's Ass'n of Hyde Park, N.Y., Inc.*, 225 F.R.D. 483 (SDNY 2005), *aff'd*, 281 Fed. Appx. 11 (2d Cir. 2008), *see also Seto v. Thielen*, 519 Fed. Appx. 966 (9th Cir. 2013). Here, defendants were forced to defend against a plainly meritless complaint and a nearly identical and equally frivolous amended complaint.

Plaintiff also advances a novel interpretation of the verb "make" in the TCPA without citing any sources for that position. An attorney may not pretend that the law favors his view instead of researching basic rules of the law. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir. 1989). Additionally, plaintiff has not argued that existing law should be modified or extended. Failure to research the law prior to the filing of a complaint warrants sanctions. *Frank v D'Ambrosi* (1993, CA6 Ohio) *app dismd* 1994 US App LEXIS 15187 (CA6 Mich). A complaint devoid of allegations rising to colorable claim for the legal theories asserted warrants sanctions. *Jacques v. DiMarzio, Inc.*, 216 F. Supp. 2d 139 (EDNY 2002).

The amended complaint is also frivolous since it does not remedy the shortcomings of the original complaint. *See Flaherty v. Gas Research Inst.,* 31 F.3d 451, 459 (7th Cir. 1994) (sanctions under Rule 11 are justified if claims are reasserted and counsel was previously apprised by opposing counsel of case law requiring dismissal of the claim).

A party who files a pleading for an improper purpose violates Rule 11(b)(1). The test for whether a party acted with an improper purpose is objective, i.e. whether the party's outward behavior manifested an improper purpose. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir. 1990) (en banc). There is no excuse or reason to file a complaint such as the one at bar. It does not meet *any* but one of the elements required for the alleged cause of action and is *entirely* based on secondhand knowledge with *no* apparent independent investigation.

In determining whether to impose sanctions, a court may consider the following factors, among others: (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern of activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) whether it was intended to injure; and (6) what effect it had on the litigation process in time or expense. Fed. R. Civ. P. 11, advisory committee notes of 1993. Applying the above factors, it is clear that sanctions are appropriate in the present case:

> (1) The misconduct of counsel was clearly willful – counsel was advised by defendants of the frivolous nature of the original complaint (*see* Ex. 2 hereto), and

---

a website belonging to defendants that has not been online in a long time. It would have taken counsel seconds to investigate this fact. Counsel has no excuse for such inattentiveness as he had nearly six months to investigate facts.

Hon. Brian M. Cogan, U.S.D.J.
July 13, 2020
Page 8

then filed the essentially identical amended complaint. In addition, counsel must have known that his inquiry into facts and law was so scant as to be nonexistent.

(2) (4) Counsel is no stranger to having his claims dismissed and receiving warnings from judges, *see e.g. Kaplan v Hezbollah*, 2020 US Dist LEXIS 31270, 19-cv-3187 (EDNY Feb. 23, 2020), Cogan J. (dismissing case), *see also Cain v Twitter Inc.*, 2018 US Dist LEXIS 180942, 17-cv-02506 (ND Cal 2018) (dismissing case), *Shatsky v Syrian Arab Republic*, 312 FRD 219 (DDC 2015) (sanction of preclusion of documents), *Gurary v Nu-Tech Bio-Med, Inc.*, 303 F3d 212 (2d Cir 2002) (counsel's co-counsel was sanctioned under Rule 11(b) for bringing frivolous claims), *Barrett v F.W. Woolworth Corp.*, 1997 US Dist LEXIS 19277, 96 Civ. 7538 (SDNY 1997) (finding monetary sanctions appropriate in where "attorneys, such as Mr. Tolchin here, fail to follow" court orders).

(3) As plaintiff's complaint, consisting of a single count, is wholly groundless from its inception, the misconduct in this case infected the entire pleading and was the direct cause of all of the expenses incurred by defendants. The original complaint was just as frivolous, and was therefore also infected by the same issue.

(5) The nature of the misconduct—a complaint with no factual or legal basis—makes it clear that counsel acted with the improper purpose of using the courts to extract a costly settlement knowing that the defense of a class action would be expensive.

(6) The effect on the litigation process is profound – this case should have never been brought and all the money spent on its defense should be refunded.

In short, the conduct was precisely the type of egregious abuse of the legal process that Rule 11 sanctions were designed to deter. Sanctions are appropriate.

### III. *Facebook v. Duguid, et al.*, case no. 19/511 Is Irrelevant

In an attempt to delay the obvious, plaintiff today asserts that *Facebook v. Duguid, et al.*, case no. 19/511, which is pending before the U.S. Supreme Court, is relevant to this matter and that resolution of this case should wait until *Facebook* is resolved. However, *Facebook* is irrelevant to the case at bar. The only question before the Supreme Court relates to the definition of an "ATDS," specifically whether a device is an ATDS even if it does not use a random or sequential number generator. The motions before this Court do not depend on the definition of an ATDS, and there is currently no assertion that defendants used an ATDS or that whatever calls plaintiff may have received – if any – did not involve an ATDS under any definition. Other definitional aspects of the TCPA, such as the meaning of "make" are not before the Supreme Court and there is no reason to believe that the Court would *sua sponte* redefine terms of the statute unrelated to the question before it, especially since none of the parties to *Facebook* are telecommunications carriers.

Respectfully yours,

*/s/ Theodor Bruening*
Theodor Bruening

Cc: Robert J. Tolchin, Esq. (by ECF)
Joseph R. Conway, Esq. (by ECF)

125 Park Ave. 25th Floor, New York, NY 10017