UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                               :

DOV ZEITLIN, individually and on behalf of  :
all others similarly situated,                       :     **MEMORANDUM DECISION**
                                                                :     **AND ORDER**
                           Plaintiff,         :
                                                                 :     20-cv-510 (BMC)
               - against -                            :

NICHOLAS PALUMBO; NATASHA            :
PALUMBO; ECOMMERCE NATIONAL,   :
LLC d/b/a TOLLFREEDIALS.COM; SIP    :
RETAIL d/b/a SIPRETAIL.COM; JON      :
KAHEN a/k/a JON KAEN; GLOBAL       :
VOICECOM, INC.; GLOBAL                     :
TELECOMMUNICATION SERVICES      :
INC.; and KAT TELECOM, INC.,            :
                                                                 :
                         Defendants.       :
                                                                 :
----------------------------------------------------------- X

**COGAN**, District Judge.

       Plaintiff Dov Zeitlin has brought this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., against two groups of defendants. One group, known as the "Palumbo defendants," consists of Nicholas Palumbo, his wife Natasha Palumbo, and two entities they control. The other group, called the "Kahen defendants," consists of Jon Kahen and two entities that he controls. According to plaintiff, both groups of defendants have knowingly participated in schemes that violated the TCPA's restrictions on robocalls.

       Before me are defendants' motions to dismiss the Amended Complaint as well as the Palumbo defendants' motion for sanctions. Because the Amended Complaint does not plausibly allege that defendants caused plaintiff's injury, the claims against them are dismissed for failure

to state a claim. Nevertheless, the allegations are not sufficiently frivolous, legally unreasonable, or factually without foundation to warrant sanctions, so the motion for sanctions is denied.

## BACKGROUND

As the Supreme Court recently observed, "Americans passionately disagree about many things," but "they are largely united in their disdain for robocalls." Barr v. Am. Ass'n of Pol. Consultants, Inc, 140 S. Ct. 2335, 2343 (2020) (plurality opinion). Count plaintiff in the majority. Echoing those in Congress, he decries robocalls as a "scourge of modern civilization," behind everything from fraud schemes to unwarranted invasions of privacy. Id. at 2344 (quoting 137 Cong. Rec. 30821 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)).

The Department of Justice also seems to agree. Last year, it simultaneously commenced two cases against the Palumbo and Kahen defendants, alleging that they participated in illegal robocalling schemes. See United States v. Palumbo, No. 20-cv-473, Dkt. No. 1 (E.D.N.Y. Jan. 28, 2020); United States v. Kahen, No. 20-cv-474, Dkt. No. 1 (E.D.N.Y. Jan. 28, 2020). The complaints explain how these schemes work. Based abroad, fraudsters use robocalling technology to send millions of calls with the same prerecorded message. It purports to arrive from a government agency – such as the Social Security Administration or the Internal Revenue Service – using "spoofing" technology to mask its true origin. The prerecorded message claims that the recipient has been implicated in criminal activity. The vulnerable, gullible, and frightened often respond to these calls, and fraudsters say that the only way to address the problem is to send money or personal information. If successful, the fraudsters drop all contact.

The government's complaints then explain how robocalls reach their recipients. When a robocall originates from abroad, it enters the United States phone system via a domestic telecommunications company known as a "gateway carrier." From there, the robocall travels over the internet through voice over internet protocol carriers – or "VOIP" carriers – which are

telecommunications companies that operate over the internet. A robocall may pass through several VOIP carriers until it reaches a "common carrier" like AT&T or Verizon, which then passes the robocall on to the recipient.

According to the government, the Palumbo and Kahen defendants are gateway carriers that "have knowingly provided U.S.-bound calling services to foreign fraudsters operating robocall scams." Palumbo, Dkt. No. 1 at 10; Kahen, Dkt. No. 1 at 10. Defendants know that these calls are robocalls, the government explains, because "call records show[] high percentages of short-duration, unanswered calls passing through their systems by the millions." Palumbo, Dkt. No. 1 at 10–11 (footnote omitted); Kahen, Dkt. No. 1 at 10 (footnote omitted). In fact, one of the Palumbos' companies boasts that it "specialize[s] in short call duration traffic," the hallmark of illegal robocalls. Palumbo, Dkt. No. 1 at 11. Both sets of defendants have ignored a flood of complaints from common carriers, trade groups, and victims of fraudulent schemes. And they receive a small fee for each call that they pass into the United States phone system and for each return call that they route back overseas, earning millions of dollars in the process.

The government thus alleged that the Palumbo and Kahen defendants engaged in wire fraud and a conspiracy to commit wire fraud. The government obtained a temporary restraining order against both sets of defendants, Kahen, Dkt. No. 7; Palumbo, Dkt. No. 18, and for the Palumbo defendants, the government also obtained a preliminary injunction, Palumbo, Dkt. No. 66. Both cases ended in consent decrees. Kahen, Dkt. No. 19; Palumbo, Dkt. No. 82.

A day after the government filed its complaints, plaintiff commenced this putative class action. Instead of alleging wire fraud, plaintiff alleged violations of the TCPA, which provides a private cause of action to recipients of illegal robocalls. See 47 U.S.C. § 229(b)(3). Plaintiff's original complaint copied the government's complaints nearly verbatim, prefacing every

allegation with "upon information and belief." Notably, however, plaintiff did not allege that he actually received a call from the Palumbo or Kahen defendants. When defendants noted this deficiency, plaintiff filed his Amended Complaint, which alleges that "the likelihood is high that [defendants] were involved with calls received by [p]laintiff" even though "it is impossible for [p]laintiff . . . to possess documentation showing that."

Both sets of defendants have since moved to dismiss the Amended Complaint. The Kahen defendants have moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that plaintiff has failed to state a claim. The Palumbo defendants agree, but they have also moved under Rule 12(b)(1), arguing that plaintiff lacks standing to bring this claim. Finally, the Palumbo defendants have moved for sanctions under Rule 11.

## DISCUSSION

### I.  The Motions to Dismiss

The TCPA bars "any person" from "mak[ing] any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). "In plain English," this language "prohibit[s] almost all robocalls to cell phones." Am. Ass'n of Pol. Consultants, 140 S. Ct. at 2344. A recipient can seek statutory damages of up to $1,500 per violation, 47 U.S.C. § 227(b)(3), and those damages "can add up quickly in a class action," Am. Ass'n of Pol. Consultants, 140 S. Ct. at 2345.

To initiate that class action, however, a plaintiff must first have Article III standing. The "irreducible constitutional minimum of standing" has three elements: (1) an "injury in fact" that is (2) "fairly traceable to the challenged action of the defendant" and (3) "likely" to be "redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (cleaned up). Here, the Palumbo defendants argue, plaintiff has not adequately alleged that the robocalls were

4

"fairly traceable" to their alleged actions, for he has not identified who, exactly, made the robocalls he received.

Although the Palumbo defendants labeled this issue as one of standing, I agree with the Kahen defendants and see it as a failure to state a claim. In many cases addressing the "fairly traceable" element of standing, the issue is whether the alleged injury is too far removed from the challenged action. See, e.g., id. at 562 (addressing situations when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else"). Here, however, the missing link is not between the injury and the challenged action, but the challenged action and the defendant. Although standing "may provide one of the useful means of addressing the question whether the plaintiff has sued the proper defendant," the same concern can "be accommodated as easily by concluding that there is no claim for relief." 13A Wright & Miller, Federal Practice & Procedure § 3531.5 (3d ed. 2020). Indeed, "[i]t is not intuitively obvious to think of identification of the proper defendant as a matter of standing," even though "the underlying concerns . . . are similar." Id.

In other TCPA cases, therefore, courts have treated the failure to identify the proper defendant as a failure to state a claim. See Ewing v. GoNow Travel Club, LLC, No. 19-cv-297, 2019 WL 3253058, at *2–3 (S.D. Cal. July 19, 2019); Morris v. SolarCity Corp., No. 15-cv-5107, 2016 WL 1359378, at *2 (N.D. Cal. Apr. 6, 2016). Courts in other contexts have followed that same approach. See Barbetta v. Cournoyer, No. 20-cv-1917, 2020 WL 2042360, at *2 (E.D.N.Y. Apr. 28, 2020) (dismissing a claim under New York's Drug Dealer Liability Act where the plaintiff could not establish that the defendant was the dealer who sold her drugs); Dudek v. Nassau Cnty. Sheriff's Dep't, 991 F. Supp. 2d 402, 414 (E.D.N.Y. 2013) (dismissing a claim under § 1983 that failed to allege that the defendant officers were personally involved in a

5

constitutional violation); see also Lopez-Motherway v. City of Long Beach, No. 2:20-cv-5652, 2021 WL 965158, at *3 (E.D.N.Y. March 15, 2021) (holding that a plaintiff stated a claim under § 1983 by alleging in the alternative that one of two defendants was responsible for a constitutional violation).

Because this case falls within that framework, it turns on the line between "plausibility" and "possibility" that the Supreme Court drew in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). There, the Court explained that "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" Id. at 679 (alteration adopted) (quoting Fed. R. Civ. P. 8(a)(2)).

The Second Circuit has held that this standard "does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." Arista Recs., LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (cleaned up). Even under this standard, however, "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." Citizens United v. Schneiderman, 882 F.3d 374, 384 (2d Cir. 2018). And when a plaintiff can acquire at least some information that would connect a defendant to the alleged wrongdoing, the "mere mention of the possibility" of wrongdoing "cannot be enough." Rosenfeld v. Lenich, 370 F. Supp. 3d 335, 349 (E.D.N.Y. 2019) (quoting Citizens United, 882 F.3d at 385); see also Teixeria v. St. Jude Med. S.C., Inc., 193 F. Supp. 3d 218, 225–26 (W.D.N.Y. 2016) (applying

6

this rule where a plaintiff slapped "upon information and belief" in front of allegations from another complaint).

The Amended Complaint falls short of this pleading standard. Plaintiff offers virtually no information that would connect defendants to the calls he received. Instead, he suggests that if defendants facilitated millions of robocalls, and if he received robocalls, then he may allege, "upon information and belief," that he received robocalls that "were made, carried, processed, connected, placed, routed, and/or facilitated by [defendants] and/or the[ir] agents, servants, employees, and related entities." Plaintiff adds:

> By their very nature, being made using spoofed telephone numbers and deceptive call back numbers, it is impossible for [p]laintiff or any member of the proposed [p]laintiff class to possess documentation showing that [defendants] were involved with their specific calls. However, . . . [defendants] are required to keep logs of every call they processed. It is anticipated that discovery in this action will reveal from [defendants'] own records how many hundreds of millions or billions of calls they were involved in, how many called [p]laintiff's phone or phones of other members of the proposed plaintiff class, and to what scam or scammer each call pertained. Given the astronomical number of calls [defendants] were involved with, and the ubiquity of cell phone owners receiving these calls, the likelihood is high that [defendants] were involved with calls received by [p]laintiff and members of the proposed plaintiff class.

In stating that he needs discovery to connect defendants to the calls, however, plaintiff all but admits that he cannot satisfy the Twombly/Iqbal standard. See Iqbal, 556 U.S. at 678–79. Under that standard, "discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim." Podany v. Robertson Stephens, Inc., 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) (citation omitted).

Plaintiff nevertheless maintains that this case presents an exception. Although he does not say so explicitly, he seems to suggest that the relevant facts "are peculiarly within the possession and control of the defendant" and that his belief "is based on factual information

7

that makes the inference of culpability plausible." Teixeria, 193 F. Supp. 3d at 225–26 (quotation omitted). To that end, he cites the "market share" concept of liability, common in products liability cases. That doctrine provides an exception to the general rule that a plaintiff must identify "the exact defendant whose product injured the plaintiff." Hymowitz v. Eli Lilly & Co., 73 N.Y.2d 487, 504–05, 541 N.Y.S.2d 941, 945 (1989). In some situations in which "the precise identification of a wrongdoer is impossible," the "market share" exception provides that "each defendant who c[annot] prove that it did not actually injure plaintiff [is] liable according to that manufacturer's market share." Id. at 509, 541 N.Y.S.2d at 948 (discussing Sindell v. Abbott Labs., 26 Cal. 3d 588, 612, 607 P.2d 924, 937 (1980)).

This theory has featured prominently in cases involving diethylstilbestrol, or "DES." See, e.g., Sindell, 26 Cal. 3d at 593, 607 P.2d at 925. Although the FDA originally approved this drug for preventing miscarriages, researchers later discovered that it led to cancer in the children of mothers who took it. Hymowitz, 73 N.Y.2d at 502–03, 541 N.Y.S.2d at 944. These children could not identify which manufacturer caused their injuries, for "the pregnant women who took DES generally never knew who produced the drug they took, and there was no reason to attempt to discover this fact until many years after ingestion, at which time the information [was] not available." Id. at 503, 541 N.Y.S.2d at 944. State courts adopted market share liability as a solution. As the New York Court of Appeals explained, "[I]t would be inconsistent with the reasonable expectations of a modern society to say to these plaintiffs that because of the insidious nature of an injury that long remains dormant, and because so many manufacturers, each behind a curtain, contributed to the devastation, the cost of injury should be borne by the innocent and not the wrongdoers." Id. at 507, 541 N.Y.S.2d at 947.

To the extent these concerns could affect the applicable pleading standard, they are not present here. For starters, plaintiff has not plausibly alleged that it is "impossible" to connect defendants to his injury. The government's complaints show that various groups – including common carriers, trade groups, the victims of fraudulent schemes, and, of course, the government – have managed to connect certain calls to defendants. But the timing of plaintiff's complaint, coupled with its wholesale adoption of the government's allegations, makes clear that plaintiff has not made similar efforts. Therefore, plaintiff's appeal to market share liability does not show that the missing facts "are peculiarly within the possession and control of the defendant." Teixeria, 193 F. Supp. 3d at 225 (quotation omitted).

Additionally, market share liability often requires a plaintiff to join a "substantial percentage" of the manufacturers of a product, see, e.g., Sindell, 26 Cal. 3d at 612, 607 P.2d at 937, but plaintiff has not made an analogous allegation here. He instead alleges that "the likelihood is high" that defendants facilitated the calls he received simply because defendants facilitated "hundreds of millions or billions" of robocalls. The "likelihood is high" is a conclusion, not a factual allegation, and there is nothing in the complaint to support it. Given the sheer volume of robocalls plaguing the nation, that allegation makes it only possible – but not necessarily probable – that defendants facilitated a robocall to plaintiff. Cf. Fed. Trade Comm'n v. Pointbreak Media, LLC, 376 F. Supp. 3d 1257, 1276 (S.D. Fla. 2019) (describing other defendants who made "tens of millions of robocalls"). Therefore, plaintiff's appeal to market share liability does not show that his belief "is based on factual information that makes the inference of culpability plausible." Teixeria, 193 F. Supp. 3d at 225–26 (quotation omitted).

To be sure, the plausibility standard does not require plaintiff to *definitively* connect defendants to the calls he received. See id. In other TCPA cases, courts have denied motions to

9

dismiss when the plaintiff "alleged facts from which [the defendant's] direct or indirect liability [could] plausibly be inferred," even if "it certainly [was] plausible that the calls could have been made by some . . . third party." Morris, 2016 WL 1359378, at *2.  This approach recognizes that the anonymous nature of robocalls impedes a plaintiff's ability to identify who facilitates the call.

These holdings also recognize the tension between the modern pleading rules and a plaintiff's difficulty in alleging facts that only a wrongdoer can know.  As the Second Circuit has observed in other contexts, however, a court must consider that difficulty alongside the danger of "fishing expeditions."  See Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 86 (2d Cir. 2013) (addressing the Fair Labor Standards Act).  The pleading rules guard against "the possible use by lawyers representing plaintiffs . . . of standardized, barebones complaints against any number of possible defendants about whom they have little or no evidence of [statutory] violations for the purpose of identifying a few of them who might make suitable defendants.'"  Id.

That concern looms especially large here.  Plaintiff filed his complaint a mere day after the government filed its complaints.  The complaint is a carbon copy, makes nearly every allegation "upon information and belief," and openly admits that plaintiff needs discovery to connect his injury to defendants' actions.  In these circumstances, both "judicial experience and common sense" counsel that plaintiff has failed to state a claim.  Iqbal, 556 U.S. at 679.

**II.    The Motion for Sanctions**

Under Rule 11, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that "the factual contentions" in a pleading "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).  "Since the inquiry must be 'reasonable under the

circumstances,' liability for Rule 11 violations requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 150 (2d Cir. 2009) (quotation omitted).  A pleading "violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." Manhattan Enter. Grp., LLC v. Higgins, No. 18-cv-6396, 2019 WL 4601524, at *2 (S.D.N.Y. Sept. 22, 2019) (quotation omitted), aff'd, 816 F. App'x 512 (2d Cir. 2020).

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction." Fed. R. Civ. P. 11(c)(1).  "Rule 11 sanctions should be granted with caution and applied only when a particular allegation is utterly lacking in support." Manhattan Enter. Grp., 2019 WL 4601524, at *2 (quotation omitted).  Still, a court "ha[s] wide discretion in deciding when sanctions are appropriate." Id.

I decline to impose sanctions in this case.  Contrary to the Palumbo defendants' contentions, plaintiff did have a legal basis for the complaint.  The Palumbo defendants rely in large part on their differing interpretation of what it means to "make" a call under the TCPA. See 47 U.S.C. § 227(b)(1)(A).  This issue is not clear-cut, and a disagreement about statutory text is not sufficient to impose sanctions.

I also disagree with the Palumbo defendants' contention that plaintiff utterly lacked a factual basis for the complaint.  Granted, the similarities between plaintiff's complaint and the government's complaints are impossible to ignore, and they suggest that this class action is parasitic on legitimate government efforts to address a serious problem.  But "[w]here, as here, a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith

11

reason for believing what he is saying, but acknowledging that his allegations are based on secondhand information that [he] believes to be true." Teixeria, 193 F. Supp. 3d at 234 (denying sanctions where a plaintiff had largely copied another complaint). Plaintiff has at least been candid that he needs discovery to connect defendants to the robocalls he received, and the government's complaints suggest that defendants were possibly involved with those calls. The anonymous nature of the calls also makes it difficult for plaintiff to identify those responsible. In these circumstances, plaintiff's allegations cannot survive a motion to dismiss, but they are not so egregious as to warrant sanctions.[1]

## CONCLUSION

The Kahen defendants' motion to dismiss [29] and the Palumbo defendants' motion to dismiss [30] are granted, but the Palumbo defendants' motion for sanctions [30] is denied. The Clerk is directed to enter judgment, dismissing the case.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
       April 5, 2021

---

[1] In light of this conclusion, I need not address plaintiff's procedural objection to the Rule 11 motion.